UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DAVID LEE ESCARENO,** | | |
| **Plaintiff,** | | |
| **v.** | | **CIVIL NO. SA-16-CA-324-PM** |
| **CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,** | | |
| **Defendant.** | | |

## MEMORANDUM DECISION AND ORDER

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge[1] and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1) and Appendix C, Rule 1 of the Local Rules for the Assignment of Duties to United States Magistrates, in the Western District of Texas, the following memorandum decision and order is entered.

## I.  JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  BACKGROUND and SUMMARY OF PROCEDURAL HISTORY

This is an action to review a decision of the Commissioner of the Social Security Administration under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  Plaintiff David Lee Escareno initiated this action pursuant to 42 U.S.C. § 405(g) seeking review of the

---

[1]  Docket nos. 3, 11, 14.

determination of Carolyn W. Colvin, the acting Commissioner of the Social Security

Administration, that plaintiff is not disabled and not entitled to receive disability insurance

benefits ("DIB").

Plaintiff filed an application for Title II and Part A of Title XVIII of the Social Security

Act DIB on December 6, 2012, alleging disability since August 1, 2012.[2]  The Social Security

Administration ("SSA") denied DIB initially on January 23, 2013,[3] and upon reconsideration on

June 14, 2013.[4]  On September 10, 2014, David R. Wurm, an administrative law judge ("ALJ"),

held a hearing[5] and considered plaintiff's claims *de novo*.  Plaintiff was represented by counsel at

the hearing, and the ALJ received testimony from plaintiff, as well as from a vocational expert

("VE"), Robert Grant.[6]  The ALJ issued a written opinion on December 9, 2014, denying benefits

and finding that plaintiff had not "been under a disability, as defined in the Social Security Act,

from August 1, 2012, through the date of [the ALJ's] decision."[7]  Plaintiff requested an Appeals

Council review of the ALJ's decision,[8] and on February 1, 2016, the Council concluded that no

basis existed to grant review.[9]  The ALJ's December 9, 2014 determination became the final

---

[2]  TR 140.

[3]  Id. at 92-95.

[4]  Id. at 99-101.

[5]  Id. at 28.

[6]  Id. at 41-45.

[7]  Id. at 23 (citing 20 C.F.R. § 404.1520(g)).

[8]  Id. at 7.

[9]  Id. at 1-4.

decision of the Commissioner.[10]

Plaintiff filed an appeal of the Commissioner's determination and, on August 22, 2016, filed an opening brief raising a single issue, summarized below, asking the Court to reverse the Commissioner's decision.[11]  On September 28, 2016, the Commissioner filed a responsive brief, arguing, in sum, that the ALJ's decision is supported by relevant legal standards and substantial evidence.[12]  As of the time of the tendering of this decision to the District Clerk for filing, no subsequent document was filed in the case and the time for plaintiff to file a reply brief has expired.

### III.  ISSUE

Whether substantial evidence supports the ALJ's decision that plaintiff was not disabled under the Social Security Act.

### IV.  STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Court is limited to a determination of whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.[13]  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[14]  It must do more than create a suspicion of the

---

[10]  Id. at 1.

[11]  Docket no. 15.

[12]  Docket no. 17 at 7.

[13]  Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001).

[14]  Id.

existence of the fact to be established, but "no substantial evidence" will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.[15]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[16]  "The court does not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[17]  Conflicts in the evidence are for the Commissioner to resolve.[18] Four elements of proof are weighed in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]  Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'"[20]

## V.  ALJ'S FINDINGS AND PLAINTIFF'S CONTENTIONS

### A.    Summary of the ALJ's Decision

The ALJ stated the issue was whether plaintiff was disabled pursuant to sections 216(i)

---

[15]  Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988).

[16]  Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

[17]  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).

[18]  Id.

[19]  Martinez, 64 F.3d at 174.

[20]  Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) (quoting Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)).

and 223(d) of the Social Security Act.[21]  The ALJ defined disability as the inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment, or combination of impairments, that could be expected to result in death, or that has

lasted, or can be expected to last, for a continuous period of not less than twelve months.[22]  The

ALJ noted there was an additional issue with respect to plaintiff's claim for a period of disability

and DIB—whether the insured status requirements of sections 216(i) and 223 were met.[23]  The

ALJ found plaintiff's earnings record showed plaintiff had acquired sufficient quarters of

coverage to remain insured through December 31, 2017.[24]  Thus, according to the ALJ, plaintiff

needed to establish disability on or before that date to be entitled to a period of disability and

DIB.[25]

 The ALJ next explained the five-step sequential evaluation process for determining

whether an individual is disabled, and noted that the steps are to be followed in order.[26]  The ALJ

then analyzed whether plaintiff met the criteria for disability pursuant to these steps and made his

findings of facts and conclusions of law.[27]

---

[21]  TR 11.

[22]  Id.

[23]  Id.

[24]  Id. at 1.

[25]  Id.

[26]  Id. at 12-13 (citing 20 C.F.R. §§ 404.1509, 404.1512(g), 404.1520(a), (b), (c), (d), (e), (f), and (g), 404.1525, 404.1526, 404.1545, 404.1560(b) and (c), 404.1565, 404.1572(a) and (b), 404.1574, 404.1575, 416.920(c); and Social Security Rulings ("SSRs") 85-28, 96-8p).

[27]  Id. at 14-23.

**Step 1 findings**.  The ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 2012.[28]

**Step 2 findings.**  The ALJ found that plaintiff had the severe impairments of lumbar degenerative disc disease, degenerative joint disease of the hips, a pain disorder, and bipolar affective disorder.[29]  The ALJ stated a "medically determinable impairment is not severe if it is only 'a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education or work experience'"[30] and plaintiff's "impairments meet this standard."[31]

**Step 3 findings**. The ALJ found that plaintiff "does not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 1520(d), 404.1525, 404.1526)."[32] Specifically, with regard to plaintiff's hip and listing 1.02A, "pertaining to dysfunction of a major peripheral weight bearing joint," the ALJ determined there "is no evidence of an inability to ambulate effectively."[33]  With regard to plaintiff's back impairment, the ALJ stated the "medical evidence does not establish the requisite evidence . . . as required under listing 1.04."[34]

---

[28]  Id. at 13 (citing 20 C.F.R. § 404.1571 *et seq.*).

[29]  Id. (citing 20 C.F.R. § 404.1520(c)).

[30]  Id. (citing SSR 85-28).

[31]  Id.

[32]  Id.

[33]  Id. at 14.

[34]  Id.

Although plaintiff has "spinal stenosis and alleged that he uses a cane" and "[s]ome lumbar images have shown abutment of a nerve root," plaintiff's "condition improved after surgeries" and "the requisite neurological and musculoskeletal finds with nerve compression were not present for a longitudinal period."[35]

With regard to plaintiff's mental impairments of anxiety, depression, sleep disturbances and related issues noted in the record, the ALJ found that plaintiff's impairments do "not meet or medically equal the criteria of listing 12.04."[36]  The ALJ considered the plaintiff's "alleged limitations on activities of daily living" and found he has "mild restriction" because "he is able to take care of his own personal care, prepare simple meals, drive an automobile, go shopping in stores, handle finances, do laundry, use the computer to shop, do basic car repairs, and go out for dinner."[37]  The ALJ also considered plaintiff's "social functioning" and found "moderate difficulties" after plaintiff presented "as depressed and angry at the consultative psychological examination," but plaintiff "consistently had a normal mood and affect in the treatment record," with "good eye contact, normal speech, good grooming, and he responded appropriately and timely."[38]  Within plaintiff's Function Report, the ALJ found plaintiff "denied any problems getting along with others" or "authority figures," and was capable of going to "grocery stores without any noted social difficulty."[39]  The ALJ further considered plaintiff's "concentration,

---

[35] Id.

[36] Id.

[37] Id.

[38] Id.

[39] Id.

persistence or pace," finding "moderate difficulties," after plaintiff's presentment at the hearing of "alleged difficulty thinking due to his psychiatric mediation" and his "alleged difficulty concentrating, remembering, understanding, and completing tasks," with "circumstantial and tangential" presentation at the "consultative examination," compared to his presentment "with normal memory, thoughts, concentration, and intelligence" in the treatment record."[40]  The ALJ considered that plaintiff was able to "perform cognitive tasks at the consultative examination fairly well," "drive and watch[] television during the day," "follow written instructions 'ok'" and "spoken instructions somewhat well," and "handle[] stress and changes in routine."[41]

The ALJ found plaintiff "has experienced no episodes of decompensation, which have been of extended duration" and "[t]here is little in the record or [plaintiff's] testimony that would indicate that the claimant has suffered from any episodes of decompensation for an extended period" with plaintiff's "treatment" being "routine, conservative, and generally effective."[42]  The ALJ further found that "paragraph B" criteria was not satisfied" because plaintiff's "mental impairment [has] not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration."[43]  The ALJ also found that "the evidence fails to establish the presence of the 'paragraph C' criteria," and plaintiff "has not demonstrated either repeated episodes of decompensation, that an increased in mental demand would cause him to decompensate, or inability to function outside a highly supportive living

---

[40] Id.

[41] Id. at 15.

[42] Id.

[43] Id.

arrangement."[44]

**Residual functional capacity finding.**  Having determined that plaintiff suffered from severe impairments that did not meet or equal a listed impairment, and before considering step 4, the ALJ proceeded to assess plaintiff's residual functional capacity ("RFC").  The ALJ stated that he had considered all of plaintiff's symptoms and the extent to which his symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence," based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p.[45]  The ALJ confirmed that he had considered the opinion evidence, as required by 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.[46]  The ALJ also indicated that he had used the two-step process applicable to RFC determinations.[47]  The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the statements based on a consideration of the entire case record."[48]  The ALJ assessed plaintiff with the following RFC:

> claimant has the residual functional capacity to perform light exertion work as defined in 20 C.F.R. § 404.1567(b) except for no crouching; occasional kneeling

---

[44]  Id.

[45]  Id.

[46]  Id. at 16.

[47]  Id.  Under that process, first, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the plaintiff's symptoms; and, second,  the ALJ must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning.  Id.

[48]  Id.

and crawling; no climbing of ropes, ladders, poles, or scaffolds; occasional climbing of stairs; occasional pushing and pulling with the bilateral lower extremities, which includes but is not limited to occasional use of foot controls; and, no work around unprotected heights or hazards.  He requires a sit/stand option at will.  The claimant is able to understand, remember, and carry out simple, routine instructions but not at a production rate pace and can respond appropriately to occasional public interaction.[49]

In making the assessment, the ALJ considered plaintiff's allegations of "constant low back pain."[50]  The ALJ noted plaintiff testified he "will stay in bed on some days depending on his pain level" and on a "typical day" plaintiff "sits and watches television and may do home exercises,"[51] he "sometimes needs help taking a shower," he "can drive to pickup medications sometimes, although certain movements cause pain," and "he could not stand for a trip around Wal-Mart," cannot "lift more than 25 pounds," "can sit about 15 to 20 minutes" and "uses his cane when he goes out."[52]  Additionally, the ALJ considered plaintiff's testimony that he "cannot cook due to difficulty standing, laundry depends on his ability to squat, and he cannot do any yard work due to pain,"[53]  he "takes Zoloft and Wellbutrin, and asserted that he cannot think right due to side effects of his medication."[54]  The ALJ found, "[a]fter careful consideration of the evidence," that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but "the claimant's statements concerning the intensity,

---

[49] Id. at 15 (citing 20 CFR § 404.1567(b)).

[50] Id. at 16.

[51] Id.

[52] Id.

[53] Id.

[54] Id.

persistence and limiting effects of these symptoms are not entirely persuasive"[55] or "well supported by the medical evidence."[56]

The ALJ also considered the treatment record that demonstrated plaintiff "had a history of low back and hip pain for several years prior to his alleged onset date."[57]  The ALJ noted that "[a]t the time of his alleged onset" plaintiff "was undergoing conservative care" and started "a job after his alleged onset date," but "stopped this job due to his back condition" when he "had to carry 100 pounds of copper at a time."[58]  Although plaintiff was "unable to perform very heavy work," the ALJ found that fact "does not warrant a finding" that he was disabled.[59]

The ALJ found Frank Kuwamura, M.D., performed "a lumbar fusion at L5-S1 with placement of a structural cage and instrumentation," in October 2012.[60]  The ALJ further found Dr. Kuwamura's postoperative treatment notes demonstrated "improvement" in plaintiff's condition,[61] with "some lumbar and groin pain" while "his leg pain and numbness had actually resolved"[62] and by November 2012 "he was walking 3 miles per day."[63]  The ALJ observed that

---

[55] Id.

[56] Id.

[57] Id. (citing Ex. 7F/26-35).

[58] Id.

[59] Id.

[60] Id. at 17 (citing Ex. 1F/2, 13-16).

[61] Id.

[62] Id. (citing Ex. 4F/15).

[63] Id. (citing Ex. 4F/13; 2F/33, 36).

in January 2013, plaintiff "noted some left leg pain and back strain, but . . . he was 'very active,'" while plaintiff's symptoms "were not as bad as prior to the surgery" and were "getting better,"[64] and in April, plaintiff "reported that his current medication seems to keep his pain tolerable and under control."[65]

The ALJ noted an "onset of radicular symptoms, predominately to the left leg," with a lumber CT scan from April 2013 demonstrating "expected postoperative changes and disc bulge with abutment of the nerve roots"[66] and, despite "some leg pain," his pain "depended on activity" and plaintiff's "symptoms were improving and better than before."[67]  The ALJ considered plaintiff's x-rays that revealed his "L5-S1 level had no yet fused,"[68] requiring "a pedicle screw fixation and laminectomy surgery on August 29, 2013."[69]  At his initial postoperative visit, the ALJ noted plaintiff "was much better" and was encouraged by Dr. Kuwamura "to start walking more and doing more activities."[70]

With regard to plaintiff's hip, the ALJ noted that he "reported a 7-year history of left hip

---

[64] Id. (citing Ex. 4F/11-12).

[65] Id. (citing Ex. 2F/38).

[66] Id. (citing Ex. 4F/7-8; 4F/69-70).

[67] Id.

[68] Id. (citing Ex. 4F/1-2).

[69] Id. (citing Ex. 4F/24).

[70] Id. (citing Ex. 12F/12-13).

pain with motion,"[71] which was "improved" when "given left hip steroid injection."[72]  The ALJ found plaintiff had left hip arthroscopic surgery to "correct a labral tear, Cam lesion, and pincer lesion,"[73] and postoperatively, plaintiff "had good range of motion with no pain," "was taken off all motion restrictions," "had some flexor irritation," but was otherwise "doing well and continued to improve."[74]

The ALJ considered plaintiff's "temporary worsening of his condition" and the fact that plaintiff was "prescribed a cane and a 'temporary' parking placard in June 2014,"[75] but noted "this prescription was well after claimant's alleged onset date, and the majority of the longitudinal record shows no use of a cane."[76]  The ALJ found "Dr. Kuwamura's treatment notes confirm a significant temporary exacerbation" of plaintiff's lumbar condition.[77]  The ALJ further noted that an MRI "showed stenosis from facet hypertrophy, although no significant disc herniation"[78] and Dr. Kuwamura "performed another surgery on October 14, 2014,"[79] which

---

[71] Id. (citing Ex. 12F/11).

[72] Id. (citing Ex. 5F/12).

[73] Id. (citing Ex. 5F/21).

[74] Id. (citing Ex. 5F/17, 20; 9F/3, 8).

[75] Id. (citing Ex. 9F/5).

[76] Id.

[77] Id.

[78] Id. (citing Ex. 12F/2-6).

[79] Id. (citing Ex. 12F/17-18).

"helped with pain," as did the medication hydrocodone.[80]  The ALJ noted Dr. Kuwamura observed plaintiff "was doing better clinically and his pain was currently controlled," making it "reasonable" for plaintiff "to restart physical therapy for his lumbar spine and left hip."[81]  The ALJ found plaintiff's surgeries on his left hip and lumbar spine were "significantly effective at helping to alleviate" plaintiff's pain symptoms[82] and noted the "record does not show any consecutive 12-month period of disabling signs or symptoms."[83]  The ALJ further noted plaintiff's "recovery of function consistent with the above residual functional capacity in the interim period"—although he had been "disabled for periods of time during the past two years"—and a "longitudinal view of the objective findings also supports a finding that the claimant is capable of work within his residual functional capacity."[84]

The ALJ observed that plaintiff's "pain management" visits were "essentially" for refills of his medications, indicating "effectiveness of medications,"[85] with "reported good relief with Soma, the muscle relaxant."[86]  The ALJ observed "as late as June of 2014," plaintiff was "able to manage the pain with his current pain regimen" and "reported good sleep quality."[87]  The ALJ

---

[80]  Id.

[81]  Id. at 18 (citing Ex. 12F/1).

[82]  Id.

[83]  Id.

[84]  Id.

[85]  Id. (citing Ex. 10F).

[86]  Id. (citing Ex. 10F/10).

[87]  Id.

14

determined that plaintiff's pain was "mainly aggravated by sitting and standing for 'prolonged' periods or 'continuous' activity," which the ALJ stated he has "well accommodated with a sit/stand option to his residual functional capacity, among other limitations."[88]  The ALJ found no indication that plaintiff had reported any medication side-effects to plaintiff's treating provider and "reviews of systems were otherwise essentially negative at pain management visits."[89]

The ALJ found after plaintiff's initial lumbar surgery in October of 2012, plaintiff "had a normal gait with no limp and no assistive device," with "full motor strength and normal sensation in detailed testing," and "minimal tenderness and minimal discomfort with range of motion,"[90] although plaintiff had "some increased hip pain with motion and decreased sensation of the left lateral leg and dorsum of the foot prior to his second surgery."[91]  The ALJ considered plaintiff's "leg symptoms in placing limitations in pushing and pulling with the bilateral lower extremities, among other functional limitations," noting plaintiff wore a back brace "at times," but he testified "he no longer uses this."[92]

The ALJ noted that following plaintiff's August 2013 lumbar surgery, Dr. Kuwamura's "examination revealed a normal gait with no limp or assistive devices, and appropriate range of

---

[88] Id.

[89] Id. (citing Ex. 10F/37, 42).

[90] Id. (citing Ex. 4F/9, 11-12).

[91] Id. (citing Ex. 4F/2).

[92] Id.

motion."[93]  The ALJ further noted by March 2014, Dr. Kuwamura "observed the claimant has

slight (4+ out of 5) weakness of left hip flexion, but otherwise full motor strength, normal

sensation, and negative straight leg raising tests."[94]  The ALJ observed that Dr. Taber's "notes

showed continued good range of motion of the left hip, but with moderate flexor irritation."[95]

The ALJ further observed that plaintiff's "most recent postoperative visit with Dr. Kumamura,"

he "had no swelling or tenderness, his range of motion was appropriate, and he was

neurovascularly intact,"[96] while a "postoperative lumber CT scan from October 2014 showed a

solid appearing anterior fusion and plate fixation and bilateral pedicle screw instrumentation at

L5-S1 and posterior annular disc bulges at L4-3 and L4-5."[97]

    The ALJ considered with regard to plaintiff's mental impairments, that plaintiff had a

"consultative psychological examination with Karri Zumwalt, Psy.D." in May of 2013, who

"noted a diagnosis of bipolar II disorder with a GAP score of 60."[98]  The ALJ "placed limitations

on the claimant's mental residual functional capacity in consideration of his pain, medications,

and mental impairments" and found the "record shows that the claimant is prescribed psychiatric

mediation through his primary care physician," there is "no evidence that he has required any

formal mental health treatment with a specialist provider such as a psychiatrist, psychologist, or

---

[93]  Id. (citing Ex. 12F/11-12).

[94]  Id. (citing Ex. 12F/8).

[95]  Id. (citing Ex. 9F/3).

[96]  Id. (citing Ex. 12F/1).

[97]  Id. at 19 (citing Ex. 12F/71-72).

[98]  Id. at 20 (citing Ex. 3F).

therapist," and the "primary care notes show that the claimant's mental symptoms were controlled with the medication."[99]  The ALJ further found plaintiff "has reported activities of daily living that are consistent with the residual functional capacity," noting the plaintiff is able to "dress and groom himself without physical help or supervision," "prepare simple meals on a daily basis," "handle finances," "make transactions in stores," "drive," "use[] a computer to shop," and "spend[] his days watching television."[100]  The ALJ observed although plaintiff "claimed to do no housework or yard work in his Function Report," he was "noted sometimes doing chores at the consultative examination."[101]

After consideration of opinion evidence from Dr. Kuwamura, Dr. Taber, Dr. Zumwalt, and the State agency medical consultants, the ALJ found plaintiff's "residual functional capacity assessment is supported by the medical evidence contained in the record," and recognized the "credibility of the claimant's allegations is weakened by inconsistencies between his allegations, his statements regarding daily activities, his prior statements to and presentation at the consultative examination, and the other medical evidence" and while plaintiff "does experience some limitations," those are "only to the extent described in the residual functional capacity above."[102]

**Step 4 findings**.  The ALJ determined that plaintiff "is unable to perform any relevant

---

[99]  Id.

[100]  Id. (citing Ex. 8E; 3F/6-7).

[101]  Id. (citing Ex. 8E; 3F/6-7).

[102]  Id. at 21.

17

past work,"[103] which includes construction helper, HVAC mechanic, a surveyor helper, and service manager.[104]

**Step 5 findings.**  The ALJ found plaintiff capable of performing other work in the national and regional economy.  The VE testified that a person of plaintiff's age, education, work experience, and RFC could work as an assembler of electrical accessories, garment tag stringer, and stuffer of toys in sporting goods.[105]  Accordingly, the ALJ found that plaintiff had not been under a disability, as defined by the Social Security Act, at any time since the alleged onset date, August 1, 2012.[106]

**B.      Plaintiff's Contentions**

On August 22, 2016, plaintiff filed his opening brief which asks the Court to reverse and remand the case to the Commissioner.[107]  Plaintiff's brief presents a single ground for reversal: the "ALJ's RFC finding is not supported by substantial evidence."[108]  Specifically, plaintiff argues "the ALJ failed to properly accommodate all of Plaintiff's limitations due to his severe medical impairments" and the "ALJ's RFC finding is inconsistent with the evidence of record"[109] because the "ALJ failed to properly accommodate Plaintiff's significant siting, standing and

---

[103]   Id. (citing 20 C.F.R. § 404.1565).

[104]   Id.

[105]   Id. at 23.

[106]   Id. (citing 20 C.F.R. § 404.1520(g)).

[107]   Docket no. 15 at 6.

[108]   Id. at 4 (title of subheading).

[109]   Id.

walking limitations in his RFC finding."[110]

## VI.  ARGUMENTS AND CONCLUSIONS OF LAW

In this section the Court will discuss in greater detail the applicable legal standards before applying those standards to plaintiff's specific claims as raised in his brief.

**A.**     **Entitlement to Benefits**

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[111]  Each aged, blind or disabled individual who meets certain income and resources limitations is entitled to receive supplemental security income.[112]  The term "disabled" or "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.[113]  A person shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work existing in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

---

[110]  Id. at 5.

[111]  42 U.S.C. § 423(a)(1) (1995).

[112]  Id. § 1382(a).

[113]  Id. § 1382c(a)(3)(A).

specific job vacancy exists for him, or whether he would be hired if he applied for work.[114]

## B.   Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[115]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[116] The first step involves determining whether the claimant is currently engaged in substantial gainful activity.  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, and work experience.  The second step involves determining whether the claimant's impairment is severe.  If it is not severe, the claimant is deemed not disabled.  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, and work experience.  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of his past work. If he can still do this kind of work, he is not disabled.  If he cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities and his age, education, and work experience, to do other work.  If he cannot do other work, he will be found to be disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[117]  Once he has shown that he is unable to perform his

---

[114]   Id. § 1382c(a)(3)(B).

[115]   20 C.F.R. § 404.1520 (2011).

[116]   Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

[117]   Id. at 564.

previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that claimant is capable of performing.[118]  If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work.[119]

## C.      Plaintiff's Claim in Appealing the ALJ's Decision

Plaintiff argues the "ALJ's RFC finding is not supported by substantial evidence"[120] and is "inconsistent with the evidence of the record."[121]  Specifically, plaintiff argues his testimony and the medical evidence "support[] Plaintiff's contentions that he is unable to perform the standing/walking requirements of light work and that a sit/stand at will option does not accommodate his inability [to] sit, stand and walk for eight hours a day, five days a week" and the ALJ "failed to properly accommodate Plaintiff's significant sitting, standing, and walking limitations in his RFC finding."[122]  In response, the Commissioner argues the "record shows that Plaintiff had a history of low back and hip pain for several years prior to his alleged disability onset date,"[123] but plaintiff "was successfully treated with surgical intervention on each occasion," and his "successful treatment" provides substantial evidence supporting the ALJ's

---

[118]   Anderson v. Sullivan, 887 F.2d 630, 632 (5th Cir. 1989).

[119]   Id. at 632-33.

[120]   Docket no. 15 at 3.  Plaintiff presents no argument on appeal challenging the ALJ's decision on ground pertaining to his mental impairments, thus the Court includes no discussion of the issue.

[121]   Id. at 5.

[122]   Id.

[123]   Docket no. 17 at 5.

RFC determination.[124]

In making his RFC determination of light exertion work with the previously noted

accommodations,[125] the ALJ relied on the records of plaintiff's treating physicians.[126]  With

respect to plaintiff's lumbar degenerative disc disease, the ALJ gave Dr. Kuwarmura's opinion

"substantial weight," recognizing "he is a treating specialist with a longitudinal treatment

_____

[124]  Id.

[125]  The ALJ accounted for plaintiff's hip, back, and pain impairments as evidenced by the treatment record, and determined certain accommodations were appropriate, including a "sit/stand option at will," with plaintiff's performance of light work being subject to certain nonexertional limitations—no "crouching," "climbing of ropes, ladders, poles, or scaffolds," or "work around unprotected heights or hazards"—and permitting plaintiff to only occasionally climb stairs, kneel, crawl, or push and pull "with the bilateral lower extremities, which includes but is not limited to occasional use of foot controls."  TR 15.  The ALJ noted he intended to "well accommodate[]" plaintiff's limitations "with a sit/stand option . . . among other limitations" in consideration of plaintiff's pain being "mainly aggravated by sitting and standing for 'prolonged' periods or 'continuous' activity."  Id. at 18. The ALJ further accommodated plaintiff's "leg symptoms in placing limitations on pushing and pulling with the bilateral lower extremities."  Id.

[126]  The ALJ also considered the state agency medical consultants' determinations, giving their opinions "some weight."  TR 21.  On January 17, 2013, Dr. Spoor reviewed the record, found plaintiff's statements to be "partially credible," and determined that plaintiff was not disabled.  Id. at 54, 57.  On June 12, 2013, Dr. Kwun reviewed the record, also found plaintiff's statements to be "partially credible"—with his "alleged limitations" not being "fully supported"—and determinated that plaintiff was not disabled.  Id. at 66, 69.
    The ALJ further considered plaintiff's testimony that, in part, asserted he: (1) "sometimes needs help taking a shower;" (2)"could not stand for a trip around Wal-Mart;" (3) "could not lift more than 25 pounds;" (4) "can sit about 15 to 20 minutes at a time;" (5) "uses his cane when he goes out;" (6) "cannot cook due to difficulty standing;" and (7) "cannot do any yard work due to pain." Id. at 16.  The ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely persuasive" (id.), with the credibility of plaintiff's allegations being "weakened by inconsistencies between his allegations, his statements regarding daily activities, his prior statements to and presentation at the consultative examination, and the other medical evidence."  Id. at 21.

relationship with the claimant, having performed multiple surgeries."[127]  The ALJ found Dr.

Kuwamura had kept plaintiff "off work for a temporary period," but "noted no restrictions" by

April 2014[128] and, following plaintiff's surgery in October 2014, found plaintiff "was doing

better clinically and his pain was currently controlled."[129]  The treatment record reflects that

during plaintiff's post-operative visit with Dr. Kuwamura in October 2014, plaintiff stated that

the surgery had "helped with pain" and that he was taking hydrocodone, which "help[ed] relieve

pain,"[130] leading Dr. Kuwamura to find it "reasonable for him to restart his physical therapy

program for his lumbar spine as well as his left hip."[131]

With respect to plaintiff's degenerative joint disease of the hips, the ALJ found "notation

of limitations due to the left hip appear to be based on claimant's subjective assertion" and "there

are no limitations opined by Dr. Taber, the hip surgeon."[132]  The medical evidence reflects that in

February 2014, Dr. Taber found plaintiff had a left hip steroid injection, which "actually gave

him significant improvement,"[133] and Dr. Taber's postoperative notes from July 2014

demonstrated plaintiff's "[r]ange of motion [was] good with no pain" and plaintiff was "doing

---

[127] Id. at 20.

[128] Id.

[129] Id. at 18.

[130] Id. at 571.

[131] Id.

[132] Id. at 20.

[133] Id. at 424.

well with no issues or concerns."[134]

With respect to plaintiff's pain disorder, the ALJ found plaintiff's "surgeries for his left hip and his lumbar spine" were "significantly effective at helping to alleviate" his "pain symptoms."[135]  The medical evidence reflects that in April 2013 plaintiff's "current medication regimen [] seem[ed] to keep pain tolerable and under control."[136]  During his pain management consult, in June 2014, plaintiff expressed his pain was "mainly aggravated when he stands or walks prolonged," but he was "able to manage his pain . . . . with current pain regimen (hydrocodone/soma)."[137]  In September 2014, plaintiff represented that his "pain is mainly aggravated by continuous activity."[138]  As noted, by October 2014 after plaintiff's third back surgery, Dr. Kuwamura observed that plaintiff's pain was "currently controlled."[139]

Although plaintiff argues the medical record and his testimony demonstrates he is "unable to perform the standing/walking requirements of light work,"[140] the "relevant question for review is whether the ALJ's decision is supported by substantial evidence, not whether the record contains evidence to support greater standing/walking limitations."[141]  After giving

---

[134]  Id. at 429.

[135]  Id. at 18.

[136]  Id. at 330.

[137]  Id. at 562.

[138]  Id. at 557.

[139]  Id. at 330.

[140]  Docket no. 15 at 5.

[141]  Ontiveros v. Colvin, No. ER-14-CV-158-ATB, 2016 WL 1688028, at *4 (W.D. Tex. Apr. 26, 2016).

"substantial weight" to the opinion of plaintiff's primary treating physician, Dr. Kuwamura,[142] the ALJ concluded plaintiff's "surgeries for his left hip and his lumbar spine" were "significantly effective at helping to alleviate the [plaintiff's] pain symptoms."[143]  "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."[144] Further, while it "is true that pain can constitute a disabling impairment, a "disabling condition" requires the pain to be "constant, unremitting, and wholly unresponsive to therapeutic treatment."[145]  Although plaintiff argues his pain has not been "completely resolved,"[146] the ALJ reviewed and weighed the evidence, and ultimately determined plaintiff's surgeries, treatment, and medications had been remedial and plaintiff's medical impairments were responsive to treatment.  In finding substantial evidence supports the ALJ's determination and the ALJ

---

[142]  TR 20.  The ALJ's decision to give less weight to plaintiff's subjective testimony, as compared to giving Dr. Kuwamura's opinion substantial weight," is "precisely the kind of determination that the ALJ is best positioned to make as the ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing."  Delgadillo v. Colvin, No-12-CV-00264-ATB, 2013 WL 5278495, at *8 (W.D. Tex. Sept. 17, 2013) (citing Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)) (internal quotation omitted).  See also Garcia v. Colvin, ER-15-CV-407-ATB, 2016 WL 4146215, at *4 (W.D. Tex. Sept. 3, 2016) (citing Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988) ("The ALJ must . . . . decide what weight to accord the various medical reports."); Losoya v. Colvin, No. EP-3:15-CV-00390-RFC, 2016 WL 5138348, at *4 (W.D. Tex. Sept. 19, 2016) (citing Jones v. Heckler, 702 F.3d 616, 621 (5th Cir. 1983)) ("It is within the ALJ's discretion to resolve conflicting evidence, including conflicting medical evidence.").

[143]  TR 18.

[144]  Vereen v. Barnhart, No. SA-05-CA-10-XR, 2005 WL 3388136, at *5 (quoting Lovelace v. Bowen, 813 F.3d 55, 59 (5th Cir. 1987)).

[145]  Falco, 27 F.3d at 163 (quoting Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990)).

[146]  Docket no. 15 at 5.

specifically accommodated plaintiff's impairments based upon the evidence,[147] the Court finds no reason exists to disturb the ALJ's determination that plaintiff is not disabled.

## VII.  CONCLUSION

Because the ALJ did not commit reversible error and his decision is supported by substantial evidence, plaintiff's request to reverse the ALJ's decision and remand the case for an award of benefits or, in the alternative, additional administrative proceedings[148] is **DENIED** and the Commissioner's decision is **AFFIRMED**.  The District Clerk's Office is requested to enter final judgment in favor of defendant and against plaintiff, each side to bear its own costs.

**SIGNED** and **ENTERED** this 21st day of October, 2016.

*Pamela A. Mathy*

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[147]  See Ontiveros, 2016 WL 1688028, at *4.

[148]  Docket no. 15 at 6.

26